UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

EVELINA CALCANO, ON BEHALF OF
HERSELF AND ALL OTHER PERSONS
SIMILARLY SITUATED,

                    Plaintiffs,

-against-

ALAMO DRAFTHOUSE CINEMAS, LLC,

                    Defendant.

-------------------------------------------------------------x

Case No.:  1:19-cv-11386-LGS

## NOTICE OF MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED CLASS ACTION COMPLAINT

PLEASE TAKE NOTICE that, upon the accompanying Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's First Amended Class Action Complaint, Defendant Alamo Drafthouse Cinemas, LLC, through its undersigned attorneys, will move this Court before the Honorable Lorna G. Schofield, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, on a date to be scheduled by this Court, for an Order: (1) pursuant to Fed. R. Civ. P. 12(b)(1) & (6) dismissing Plaintiff's First Amended Class Action Complaint in its entirety with prejudice; and (2) awarding Defendant the costs and fees associated with this Motion, as well as, such other and further relief as the Court deems just and proper.

FURTHER as previously ordered by this Court, Plaintiff's opposition to Defendant's Motion to Dismiss shall be served and filed on or before June 10, 2020 and Defendant's Reply Memorandum of Law shall be served and filed on or before June 17, 2020.

Dated:  May 26, 2020
White Plains, New York

Respectfully submitted,


By:      */s/ Joseph J. DiPalma*
Joseph J. DiPalma
JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060

Joseph.DiPalma@jacksonlewis.com
ATTORNEYS FOR DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

......................................................................X

EVELINA CALCANO, ON BEHALF OF
HERSELF AND ALL OTHER PERSONS
SIMILARLY SITUATED,

                             Plaintiffs,

                                                                    Case No.:  1:19-cv-11386-LGS

-against-

ALAMO DRAFTHOUSE CINEMAS, LLC,

                             Defendant.

......................................................................X

## <u>CERTIFICATE OF SERVICE</u>

             This is to certify that a true and correct copy of the Notice Of Motion To Dismiss

Plaintiff's First Amended Class Action Complaint and Defendant's Memorandum Of Law In

Support of Motion To Dismiss has been served on counsel for record of Plaintiff via First Class

Mail and ECF on May 26, 2020 at the address listed below:

                         Darryn G. Solotoff, Esq.
                     Law Office of Darryn G. Solotoff, PLLC
                        25 Melville Park Road, Suite 108
                          Melville, New York 11747
                               ds@lawsolo.net


                                                    _/s/ Joseph J. DiPalma_____
                                                    Joseph J. DiPalma

4846-9764-2429, v. 1

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

**EVELINA CALCANO, ON BEHALF OF**
**HERSELF AND ALL OTHER PERSONS**
**SIMILARLY SITUATED,**

                    **Plaintiffs,**
      **vs.**

**ALAMO DRAFTHOUSE CINEMAS, LLC,**

                 **Defendant.**

                                **Case No. 1:19-cv-11386-LGS**

---------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 4

ARGUMENT ................................................................................................................ 5

    I.     The FAC Should Be Dismissed Under Fed. R. Civ. P. 12(B)(6) Because Plaintiff Fails To State A Cognizable Claim Under The ADA, The NYSHRL Or The NYCHRL. ............. 5

        A.    The ADA Does Not Require Defendant to Make Or Sell Braille Gift Cards............. 6

        B.    The ADA's Auxiliary Aids Regulation Does Not Require Defendant To Make Or Sell Braille Gift Cards.................................................................................. 12

        C.    Plaintiff's Remaining Claims Should Be Dismissed With The ADA Claim............ 18

    II.    The FAC Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because Plaintiff Lacks Standing To Sue Under The ADA,  The NYSHRL And The NYCHRL. ............................ 18

        A.    Plaintiff Has Not Alleged Facts Sufficient To Show Actual Past Injury And Imminent Future Injury................................................................................... 18

        B.    Plaintiff's Remaining Claims Should Be Dismissed With The ADA Claim............ 24

CONCLUSION.............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access 4 All, Inc. v. G&T Consulting Co., LLC*,
No. 06 CIV 13736, 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ...........................................7

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
458 F. Supp. 2d 160 (S.D.N.Y. 2006).................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................5

*Camarillo v. Carrols Corp.*,
518 F.3d 153 (2d Cir. 2008)................................................................................................16

*Castillo v. The John Gore Organization, Inc.*,
No. 19-cv-388, 2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019) ............................................23

*Childress v. Fox Assocs., LLC*,
932 F.3d 1165 (8th Cir. 2019) ............................................................................................15

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...............................................................................................................19

*Cortlandt Street Recovery Corp. v. Hellas Telecomm.*,
790 F.3d 411 (2d Cir. 2015)................................................................................................18

*Doe v. Mut. of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999) .....................................................................................8, 9, 10

*Dominguez v. Banana Republic, LLC*,
No. 19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193 (S.D.N.Y. April 23,
2020) ....................................................................................................................... *passim*

*Feldman v. Pro Football, Inc.*,
419 F. App'x 381 (4th Cir. 2011) .......................................................................................15

*Feltzin v. Stone Equities*,
No. 16-cv-6457, 2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018) .........................................22, 23

*Feltzin v. Triangle Props. #1, LLC*,
No. 14-cv-5131, 2016 WL 11599264 (E.D.N.Y. Dec. 15, 2016)....................................20, 21

*Ford v. Schering-Plough Corp.*,
145 F.3d 601 (3d Cir. 1998)................................................................................................8

*Funches v. Barra*,
  No. 14-cv-7382, 2016 WL 2939165 (S.D.N.Y. May 17, 2016) ..........................................8, 10

*Jancik v. Redbox Automated Retail, LLC*,
  No. SACV 13-1387, 2014 WL 1920751 (C.D. Cal. May 14, 2014) ......................................10

*KM Enter., Inc. v. McDonald*,
  No. 11-CV-5098 ADS ETB, 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012),
  *aff'd*, 518 F. ...............................................................................................................................18

*Kreisler v. Second Ave. Diner Corp.*,
  731 F.3d 184 (2d Cir. 2013)....................................................................................................3, 19

*Krist v. Kolombos Rest. Inc.*,
  688 F.3d 89 (2d Cir. 2012)..........................................................................................................6

*Lamb v. Charlotte Cty.*,
  429 F. Supp. 2d 1302 (M.D. Fla. 2006) ...................................................................................23

*Lenox v. Healthwise of Kentucky, Ltd.*,
  149 F.3d 453 (6th Cir. 1998) ......................................................................................................8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................................3, 18

*McNeil v. Time Ins. Co.*,
  205 F.3d 179 (5th Cir. 2000) ...................................................................................................8, 9

*Mendez v. Apple, Inc.*,
  2019 WL 2611168 .....................................................................................................................24

*Noel v. New York City Taxi & Limousine Comm'n*,
  687 F.3d 63 (2d Cir. 2012)...........................................................................................................7

*Norkunas v. Wynn Resorts Holdings, LLC*,
  No. 11-cv-1499, 2007 WL 2949569 (D. Nev. Oct. 10, 2007) .................................................23

*Perdum v. Forest City Ratner Cos.*,
  677 F. App'x 2 (2d Cir. 2017) ..................................................................................................20

*Rodal v. Anesthesia Grp. of Onondaga*,
  369 F.3d 113 (2d Cir. 2004) ("New York State disability discrimination
  claims are governed by the same legal standards as federal ADA claims.")...........................18

*Romanello v. Shiseido Cosmetics Am., Ltd.*,
  No. 00 Civ. 7201, 2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002)..........................................18

*Shariff v. Channel Realty of Queens, LLC*,
  No. 11-cv-1499, 2013 WL 5519978 (E.D.N.Y. Sept. 30, 2013) ............................................21

*Small v. Gen. Nutrition Cos.*,
  388 F. Supp. 2d 83 (E.D.N.Y. 2005) ..............................................................................19, 22

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt.*,
  712 F.3d 705 (2d Cir. 2013)..................................................................................................24

*Stephens v. Shuttle Assocs., L.L.C.*,
  547 F. Supp. 2d 269 (S.D.N.Y. 2008)........................................................................13, 14, 18

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ..........................................................................................................19

*West v. Five Guys Enters., LLC*,
  No. 15-cv-2845, 2016 WL 482981 (S.D.N.Y. Feb. 5, 2016) ...........................................13, 14

*West v. Moe's Franchisor, LLC*,
  No. 15-cv-2846, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015) ...................................13, 14, 15

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 1999) .................................................................................................8

**Statutes**

28 U.S.C. § 1367(c)(3)................................................................................................................24

42 U.S.C. § 12182(a) ...................................................................................................................7

ADA ............................................................................................................................... *passim*

ADA Title III ................................................................................................................. *passim*

Americans with Disabilities Act ....................................................................................................1

Americans with Disabilities Act ....................................................................................................6

N.Y.U.C.C....................................................................................................................................11

New York City Human Rights Law................................................................................................4

NYCHRL..........................................................................................................................5, 18, 25

NYSHRL...........................................................................................................................5, 18, 25

Rehabilitation Act ........................................................................................................................12

State Human Rights Law ........................................................................................................4

UCC .......................................................................................................................................11

**Other Authorities**

28 C.F.R. Pt. 36, App. C ......................................................................................................16

28 C.F.R. § 36.303(b)(2).......................................................................................................16

28 C.F.R. § 36.303(c)............................................................................................................12

28 C.F.R. § 36.303(c)(1)(i) ...................................................................................................15

28 C.F.R. § 36.303(c)(1)(ii)..............................................................................................14, 17

28 C.F.R. § 36.307 .......................................................................................................7, 10, 12

28 C.F.R. § 36.307(a)......................................................................................................7, 10

28 C.F.R. § 36.307(c)...................................................................................................7, 11, 12

56 Fed. Reg. 35,544, 35,567 (July 26, 1991)........................................................................15

56 Fed. Reg. 35,571 (July 26, 1991).......................................................................................7

Fed. R. Civ. P. 12(B)(6) ....................................................................................................5, 18

MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/good.
(last visited May 19, 2020) ............................................................................................10

National Federation of the Blind, The Braille Literacy Crisis in America (Mar. 26,
2009),
https://www.nfb.org/sites/www.nfb.org/files/images/nfb/publications/bm/bm0
9/bm0905/bm090504.htm.............................................................................................16

Report from the House Committee on Education and Labor, House Rep. No. 101-
485(II) ............................................................................................................................17

Report from the House Committee on the Judiciary, House Rep. No. 101-485(III)...................17

F.R.C.P. 12(b)(1) ..................................................................................................................18

## INTRODUCTION

This case—and the more than 240 nearly identical cases pending in this Court and the Eastern District of New York—are manufactured controversies filed by a group of blind plaintiffs attempting to expand the Americans with Disabilities Act ("ADA") and similar state and municipal law to regulate the mix of products that retailers, theaters, and restaurants offer to the public. Plaintiff has filed multiple lawsuits, claiming here, as in her other cases, that Title III of the ADA requires Defendant to

> design, implement and sell store gift cards . . . that may include Braille writing that identifies the name of the merchant and the denomination of the gift card (if the gift card has a specified denomination) and additionally convey other pertinent and statutorily required information contained on all of Defendant's store gift cards such as terms of use, expiration dates, fees, a toll-free telephone number, ability to ascertain gift card balance, etc.

First Amended Complaint ("FAC") ¶ 55. Because her claim directly contravenes the long-recognized understanding that Title III does not require a business to alter its inventory or offer special goods that it has not previously chosen to carry, it should be dismissed as a matter of law.

The fundamental problem with Plaintiff's claim is that Title III's purpose is to *ensure access* to the goods and services that places of public accommodation typically provide, not *dictate the content* of inventory. The plain language of Title III and the Department of Justice's implementing regulation make clear that a public accommodation may not discriminate based on disability in providing access to its goods. However, the statute does not require the provision of special goods different than those typically provided merely because such goods may be more valuable to disabled customers. Thus, a bookstore is not required to stock Braille versions of books, a restaurant is not required to offer foods that meet certain dietary needs, and a video store is not required to provide closed-caption DVDs. So too, a cinema is not required to stock

special Braille versions of gift cards. As Plaintiff recognizes, gift cards are goods that some companies display, market and sell for revenue and profit, sometimes even in other retail stores. And Braille gift cards thus are special goods that companies can choose to make, stock, and sell. But they are not mandated by the ADA, New York state law or New York City law.  To conclude otherwise would transform the ADA into a far-reaching regulation of the American economy that Congress never intended. This fatal flaw in Plaintiff's claim requires dismissal of not only the ADA claim but also the related claims under New York state and New York City law.

Plaintiff attempts to avoid dismissal by arguing that a gift card should not be viewed as the special good it most certainly is, but rather as a service which must be made accessible through Braille by the provision of auxiliary aids.  However, even assuming for the sake of argument that the Braille gift card Plaintiff seeks somehow is not a "special good," Plaintiff's argument still fails because the auxiliary aids regulation Plaintiff relies upon does not require that public accommodations sell Braille gift cards.  This is true for two independent reasons.

First, the requirement for a public accommodation to provide an auxiliary aid is triggered when an individual with a disability puts the public accommodation on notice of the need for an auxiliary aid.  Here, that predicate act never occurred.  Prior to filing the FAC, the only communication Plaintiff had with Defendant was one phone call to ask if Defendant sold Braille gift cards.  Plaintiff did not request an auxiliary aid, and the single question he asked was insufficient to put Defendant on notice that he needed an auxiliary aid.  Because Defendant was never on notice that Plaintiff needed an auxiliary aid, Defendant could not – and did not – deny Plaintiff an auxiliary aid as a matter of law.

2

Second, even assuming for the sake of argument that Defendant had notice that Plaintiff needed an auxiliary aid, the law is well settled that the ultimate decision as to what type of auxiliary aid would have been provided rests with Defendant, not Plaintiff.  Moreover, given that (1) courts and the Department of Justice ("DOJ") regularly approve providing auxiliary aids other than Braille in order to communicate written material to vision-impaired customers (e.g., reading information aloud, audio recordings, other), (2) the same authorities repeatedly recognize that public accommodations should not be compelled to provide Braille to vision-impaired customers when other auxiliary aids are available, and (3) verifiable statistics showing only ten percent of people who are blind in the United States read Braille, Plaintiff's claim that Defendant violates the law by failing to make and sell Braille gift cards should be summarily rejected.

Lastly, Plaintiff's FAC should be dismissed because Plaintiff lacks standing.  To have Article III standing, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In ADA Title III cases where the only available relief is injunctive, the Plaintiff must also allege facts to show that he is threatened with imminent future harm.  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013).  Here, as a matter of law, Plaintiff cannot make either showing.  Plaintiff did not suffer an "injury in fact" because she had no right to compel Defendant to sell a Braille gift card.  Moreover, the FAC alleges no facts to suggest that Plaintiff would want or need to buy or use Defendant's gift cards in the future, so she faces no imminent injury.  The FAC's boilerplate claim that Plaintiff will purchase Defendant's gift card in the future when it has Braille is insufficient as a matter of law to confer standing for an ADA Title III claim for injunctive relief.

## BACKGROUND

Filed contemporaneously with roughly 250 similar lawsuits, Plaintiff alleges that Defendant violated Title III of the ADA, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") by failing to sell Braille gift cards.

According to the FAC, there is a robust "market" for store gift cards, FAC ¶¶ 31-32 - *i.e.*, gift cards "redeemable at a single merchant or an affiliate group of merchants that share the same name, mark or logo," FAC ¶ 4 n.2. Plaintiff alleges that sales of gift cards in 2019 amounted to $400 billion. FAC ¶ 31. A survey of consumers also showed that over 73% of adults purchased at least one gift card as a gift for another during the holiday season. *Id.* Plaintiff asserts that consumers use store gift cards because they allow "consumers to choose their own purchase privately and consumers use them for their own budgetary reasons as well as an alternative to carrying around cash for security reasons." FAC ¶ 33. Plaintiff alleges "upon information and belief, there is only one gift card on the market that contains Braille." FAC ¶ 35 n.8.

Plaintiff is a resident of New York City who is blind and asserts that she requires Braille to read material. FAC ¶¶ 2, 24. She alleges that on November 11, 2019 she contacted Defendant's customer service office, inquired if it sold gift cards containing Braille, and was informed that Defendant does not sell such gift cards. FAC ¶ 16. The FAC contains no other information about this contact.

In the FAC, Plaintiff alleges that the lack of Braille gift cards "deterred Plaintiff from visiting Defendant's physical locations, and enjoying them equal to sighted individuals because Plaintiff was unable to purchase an accessible gift card that provides meaningful access to the material information printed thereon which a non-visually impaired person can access independently." FAC ¶ 44. The FAC also alleges that "Plaintiff intends to immediately go

purchase a store gift card issued by the Defendant as soon as they become available and accessible with suitable auxiliary aids and services for effective communication to be used independently, as sighted individuals do." FAC ¶ 45. But Plaintiff makes no allegations explaining why she sought to purchase a Braille gift card, how the unavailability of Braille kept her from buying a gift card, how Defendant's decision not to offer Braille gift cards prevented her from accessing Defendant's cinema, her prior patronage of any particular Alamo Cinema, and which Alamo Cinema location, if any, she planned to visit in the future.

Plaintiff alleges that manufacturing technology exists to "add[]…Braille on the gift card and packaging." FAC ¶ 83. Plaintiff thus asks this Court to issue "a permanent injunction requiring Defendant to design, implement, distribute and sell store gift cards … that are accessible to blind and vision-impaired individuals that may include Braille writing that identifies the name of the merchant and the denomination on the gift card (if the gift card has a specified denomination)." FAC ¶ 55. The injunction would require Defendant to "additionally convey other pertinent information contained on all of Defendant's store gift cards such as terms of use, expiration dates, fees, a toll-free telephone number, ability to ascertain gift card balance, etc." FAC ¶ 55.

## ARGUMENT

### I. The FAC Should Be Dismissed Under Fed. R. Civ. P. 12(B)(6) Because Plaintiff Fails To State A Cognizable Claim Under The ADA, The NYSHRL Or The NYCHRL.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). And to be entitled to relief under Title III of the ADA, a plaintiff must show that: (1) he or she is

disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA. *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012). Plaintiff has not plausibly alleged that Defendant discriminated against her within the meaning of the ADA.

### A.      The ADA Does Not Require Defendant to Make Or Sell Braille Gift Cards.

Plaintiff alleges that "failure to sell pre-paid cash cards, colloquially referred to as 'store gift cards to consumers' that have auxiliary aids and services, such as writing in Braille" is "a violation of Plaintiff's rights under the Americans with Disabilities Act." FAC ¶¶ 4, 9. To remedy this alleged discrimination, Plaintiff seeks an injunction requiring Defendant to "design, implement and sell store gift cards … that may include Braille writing that identifies the name of the merchant and the denomination of the gift card (if the gift card has a specified denomination)," as well as "terms of use, expiration dates, fees, a toll-free telephone number, ability to ascertain gift card balance, etc." FAC ¶ 55.

It is apparent from Plaintiff's requested relief that Plaintiff seeks to compel Defendant to manufacture and sell a very specific item that it does not currently offer in its inventory: a gift card that has written words translated into Braille, either on the card itself or on the packaging. However, from the beginning, the ADA's regulations have included a very specific provision stating that public accommodations are not required to offer accessible or special goods with these features.  When the ADA was enacted, the DOJ promulgated, under the Attorney General's express authority to issue regulations "to carry out the provisions" of Title III, 42 U.S.C. § 12186(b), a rule that specifically disclaims any requirement on a place of public accommodation to alter its inventory in order to make or sell special goods. In the rule's

preamble, the DOJ explained "[t]he purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided."[1] The regulation specifies that Title III does not require a public accommodation to "alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a). It defines special goods by way of examples: "Brailled versions of books, books on audio cassettes, closed-captioned video tapes, special sizes or lines of clothing, and special foods to meet particular dietary needs." 28 C.F.R. § 36.307(c). A DOJ technical assistance manual lists additional examples, including that a local bookstore that customarily stocks only regular print versions of books is not required to expand its inventory to include large print or audio books.[2] That manual "is persuasive authority as to the ADA's meaning, unless it is plainly erroneous or inconsistent with the ADA's regulations." *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012).

Consistent with the principles set forth in 28 C.F.R. § 36.307, as well as the plain language of the statute, numerous courts have held that a public accommodation is not required under the ADA to change the mix of goods that it stocks and sells to include accessible goods. Title III prohibits discrimination on account of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). By its plain terms, this provision regulates *access* to the goods and services of a public accommodation but not *the type of goods* or services offered. *Dominguez v. Banana Republic, LLC*, No. 19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193,

---

[1] Nondiscrimination on the Basis of Disability by Public Accommodations in Commercial Facilities, 56 Fed. Reg. 35,571 (July 26, 1991).
[2] Technical Assistance Manual III-4.2500.

*17 (S.D.N.Y. April 23, 2020) (specifically holding that "[t]here is simply no legal support for Plaintiff's assertion that Title III requires Banana Republic to create Brailled gift cards for the visually impaired. In fact, the plain text of the ADA and the Department of Justice's implementing regulations make clear the exact opposite: a retailer need not alter the mix of goods that it sells to include accessible goods for the disabled."); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 188 (5th Cir. 2000); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115–16 (9th Cir. 1999); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999); *Lenox v. Healthwise of Kentucky, Ltd.*, 149 F.3d 453, 457 (6th Cir. 1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998); *Funches v. Barra*, No. 14-cv-7382, 2016 WL 2939165, at *4 (S.D.N.Y. May 17, 2016). An owner denies the full and equal enjoyment of offered goods or services if he denies or inhibits access to those goods and services. *See McNeil*, 205 F.3d at 186. However, "[t]he goods and services that the business offers exist a priori and independently from any discrimination. Stated differently, the goods and services referred to in the statute are simply those that the business normally offers." *Id.*

Numerous cases from around the country illustrate the common sense understanding that a public accommodation is not required under the ADA to change the mix of goods that it stocks and sells. In *Dominguez* this Court was required to address this specific issue. Judge Woods, in a well-reasoned decision, held that companies such as Defendant are not required to stock Braille gift cards. The Court opined that "[g]ift cards are plainly the type of goods a business normally offers that need not be made accessible pursuant to Title III." *Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *15-17. Moreover, in *Weyer*, for example, the Ninth Circuit held that an insurance company did not violate Title III by providing insurance policies that treat individuals with certain disabilities differently than others. *Weyer*, 198 F.3d at 1115. The court explained

that "[t]he ordinary meaning of [Title III] is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services." *Id.* But the law "does not require provision of different goods or services." *Id.* Thus, "'an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled.'" *Id.* (quoting *Ford*, 145 F.3d at 613).

In *McNeil*, the Fifth Circuit likewise reasoned that "the plain language of the statute demonstrates that a business is not required to alter or modify the goods or services it offers to satisfy Title III." 205 F.3d at 186. Title III prohibits a place of public accommodation "from denying the disabled access to the good or service and from interfering with the disableds' full and equal enjoyment of the goods and services offered."  *Id.* at 188.  But the owner "need not modify or alter the goods and services that it offers." *Id.* To conclude otherwise, the court explained, would "demand[] the impossible" and lead to "impracticable results," such as requiring shoe stores to limit the styles available to most customers in favor of special types of shoes, or requiring restaurants to limit their menus to provide special foods to diabetics. *Id.* at 187.

The Seventh Circuit reached a similar decision in *Mutual of Omaha*. Reviewing the statute's plain language, the court explained that "[t]he common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated." *Mut. of Omaha Ins. Co.*, 179 F.3d 557, 558, 560 (7th Cir. 1999). "A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons." *Id.* The court further reasoned that "[h]ad Congress purposed to impose so

enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts," one would expect Congress to have "made its intention clearer." *Id.*

Two federal district courts recently applied the DOJ regulation – 28 C.F.R. §36.307 – in analogous cases that yielded predictably correct results.  First, the Central District of California refused a plaintiff's demand that automated DVD rental kiosks be required to stock special closed-captioned DVDs. *Jancik v. Redbox Automated Retail, LLC*, No. SACV 13-1387, 2014 WL 1920751, at *1, 5–6 (C.D. Cal. May 14, 2014). The court explained that "[a]ccording to 28 C.F.R. § 36.307(a), Title III does not require a place of public accommodation to 'alter its inventory to include accessible or special goods that are designed for or facilitate use by, individuals with disabilities.'" *Id.* at *5. "[C]losed-captioned DVDs" are precisely such special or accessible goods. *Id.* at *5. Second, in *Funches*, this Court rejected the plaintiff's assertion that the ADA required a business to manufacture and offer for sale cars with special hand controls. 2016 WL 2939165, at *4. Applying DOJ's special goods rule, this Court concluded that Title III regulates only access to goods and services. *Id.* The law does not require a business to "alter its inventory to include accessible or special goods." *Id.* (quoting 28 C.F.R. § 36.307(a)).

Seeking to avoid the application of 28 C.F.R. § 36.307(a), the FAC alleges that Defendant's store gift cards "are a service that is integrated with" its theaters.  FAC ¶ 70. However, the FAC alleges no facts to support this claim, and there is no question that Defendant's gift cards fall comfortably within the common and legal definition of the term "goods".  *See Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *15.

Merriam-Webster defines the term "goods" as "personal property having intrinsic value" and "something manufactured or produced for sale."[3] There can be no dispute that Defendant's

---

[3] See MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/good. (last visited May 19, 2020).

gift card is a physical card that, once purchased, becomes the purchaser's personal property. As Plaintiff's FAC makes clear, gift cards are goods that Defendant normally offers. FAC ¶ 29. As with any other good that it advertises and offers, Defendant invests "substantial sums in marketing and selling its store gift cards and has generated significant revenue from the store gift cards." FAC ¶ 58. Like other goods, a sale is completed upon the purchase of the gift card, and the store receives revenue immediately. FAC ¶ 32.  And finally, like many other goods, a gift card is often stocked and sold by stores other than the company at which the gift card can be redeemed.[4]

A Braille gift card, in turn, is a special good. *See Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *15-17.  It is an altered version of an ordinary good offered by a retailer. Like the other special goods in DOJ's rule, the Braille gift card that Plaintiff maintains the ADA requires Defendant to sell—with Braille on the card itself and its packaging—is a good that is "designed for" and "facilitate[s] use" by individuals with disabilities. 28 C.F.R. § 36.307(c). Indeed, Plaintiff's requested injunction expressly seeks to mandate that Defendant "*design*, implement and sell store gift cards" containing Braille. FAC ¶ 55 (emphasis added). That is indistinguishable from the examples of special goods listed in 28 C.F.R. § 36.307(c), such as "Brailled versions of books" and "closed-captioned video tapes"; all are goods specially altered in a way that may make them more valuable to the disabled but that also changes the good for all consumers. *See Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *15-17.

---

[4] Defendant's gift card also falls squarely within the Uniform Commercial Code's definition of "goods."  *See* N.Y.U.C.C. Law § 2-105(1) (McKinney).  Under the UCC, "'Gods' means all things … which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid."  *See also* UCC Official Cmt. (definition of "goods" under the UCC "is intended to cover the sale of money when money is being treated as a commodity" rather than as a "medium of payment").  Defendant's gift card is a tangible "thing" which is in fact "moveable" as soon as it is sold.

Accordingly, a decision by a place of public accommodation to neither make nor sell Braille gift cards is not discriminatory under the ADA. Plaintiff's demand that Defendant include in its inventory Braille gift cards is a request for a special good that the ADA does not require Defendant to honor, no different from a demand that a bookstore include in its inventory Braille versions of books or that a restaurant serve certain types of food. 28 C.F.R. § 36.307(c).

By its plain terms, and as implemented by the DOJ's special goods rule, the ADA does not require Defendant to alter its mix of store gift cards to include specially "design[ed]" Braille gift cards.  FAC ¶ 56.[5]  Plaintiff's claim should accordingly be dismissed as a matter of law.

### B.     The ADA's Auxiliary Aids Regulation Does Not Require Defendant To Make Or Sell Braille Gift Cards.

Apparently recognizing that her claim contravenes the ADA's long-understood distinction between ensuring access and altering inventory, Plaintiff argues Defendant is required to make and sell Braille gift cards as an auxiliary aid under 28 C.F.R. § 36.303(c). FAC ¶¶ 50-55. Again, what Plaintiff seeks – a Braille-embossed gift card with Braille packaging – is not an auxiliary aid, but a special good, and per 28 C.F.R. § 36.307, Defendant is not required to make or sell special goods.   Indeed, Judge Woods recently considered this exact argument in *Dominguez* and opined:

> The universe of relevant facts in Dominguez's complaint is as follows: On a phone call with a Banana Republic customer service employee, he inquired whether the store stocks Braille gift cards. *See* FAC ¶ 16. The employee confirmed that the store did not, and did not, of her own accord, offer Plaintiff an auxiliary aid or service. *See* FAC ¶¶ 16-17. The Plaintiff then unsuccessfully attempted to locate an accessible Banana Republic gift card. *See* FAC ¶ 18. Finding nothing, Plaintiff sued.

---

[5] Similarly misplaced is Plaintiff's contention that gift cards are "covered by the ADA and therefore required to be accessible like the U.S. Currency."  (FAC ¶ 34.)  Plaintiff cites no valid authority under Title III in support of that argument.  Plaintiff's reliance on *American Council of the Blind v. Paulson*, 463 .F. Supp. 2d 51 (D.D.C. 2006) is misplaced, as that case involved a claim under the Rehabilitation Act, not ADA Title III.

> Plaintiff was not denied access to an auxiliary aid or service, much less one that
> effectively communicated information about Banana Republic's gift cards. The
> recitation of facts in Dominguez's complaint make it clear that he never even
> asked for one, even though Plaintiff acknowledges that "no one specific auxiliary
> aid is mandated" by the ADA. Opp'n at 22. He knows nothing about the range of
> auxiliary aids and services Banana Republic offers the visually impaired. He
> asked only about Braille gift cards and learned only that Banana Republic does
> not sell accessible gift cards. *See* FAC ¶¶ 17-18.

*See Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *27-28.   Notwithstanding Judge Woods'

decision that is controlling on this point, even assuming for the sake of argument that Braille

embossing on a store gift card could constitute an auxiliary aid, rather than a special good,

Plaintiff's argument still fails because the auxiliary aids regulation Plaintiff relies upon does not

require that public accommodations make and sell Braille gift cards for two independent reasons.

First, the requirement for a public accommodation to provide an auxiliary aid is triggered

when an individual with a disability puts the public accommodation on notice of the need for an

auxiliary aid.   One communication is insufficient as a matter of law.    In *West v. Moe's*

*Franchisor, LLC*, the court dismissed a claim by blind customers who alleged that they had

visited the defendant's restaurant on one occasion, requested assistance using a touch screen

drink machine, and were denied such assistance. No. 15-cv-2846, 2015 WL 8484567, at *4

(S.D.N.Y. Dec. 9, 2015). This Court held the plaintiffs failed to state a claim under the ADA

because no reasonable inference could be drawn from one "isolated incident" that "Moe's fails to

train its employees to provide effective auxiliary aids and services." *Id.* In *Stephens v. Shuttle*

*Assocs., L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008), where plaintiff alleged that

defendants "failed to adopt policies or procedures to effectively train their employees on how to

deal with disabled individuals," which Plaintiff alleges here (FAC ¶ 49(e)), the court dismissed

plaintiff's claims because, "based only on one isolated incident," plaintiff alleged no set of facts

indicating defendants violated Title III. *See also West v. Five Guys Enters., LLC*, No. 15-cv-

2845, 2016 WL 482981, at *1–2 (S.D.N.Y. Feb. 5, 2016) (court concluded that a claim for an auxiliary aid cannot be based on just "one occasion.").

As these cases illustrate, the DOJ's regulation expressly contemplates "consult[ation]" by the disabled patron to put the public accommodation on notice of the need for an auxiliary aid so the public accommodation can fairly determine the "type of auxiliary aid [that] is needed to ensure effective communication." 28 C.F.R. § 36.303(c)(1)(ii).[6] Here, that predicate act never occurred. Nothing in the FAC reflects that Plaintiff alerted Defendant to any need for an auxiliary aid prior to filing the present lawsuit. Plaintiff pleads that she "telephoned Defendant's customer service office in an attempt to purchase a store gift card from the Defendant and inquired if Defendant sold store gift cards containing Braille and was informed by Defendant's employees that Defendant does not sell store gift cards containing Braille." FAC ¶ 16. That is the sum total of her alleged interaction with Defendant (same as the interaction in *Dominguez*), and it falls far short even of the allegations found to be insufficient in *Moe's*, *Five Guys* and *Stephens*. It lacks any facts suggesting Plaintiff told Defendant that she is blind, that she was unable to purchase or use a gift card on her own, why she sought to purchase one, or that she needed assistance of any kind to do so. Plaintiff gave Defendant no notice that she desired an auxiliary aid, much less any opportunity for the "consult[ation]" between the disabled patron and the place of public accommodation that is contemplated expressly in DOJ's rule. 28 C.F.R. § 36.303(c)(1)(ii).  Because Defendant was never on notice that Plaintiff needed an auxiliary aid, Defendant could not – and did not – deny Plaintiff an auxiliary aid as a matter of law.

Second, assuming for the sake of argument that Plaintiff had put Defendant on notice that she needed an auxiliary aid to access the goods and services Defendant makes available to its

---

[6] *See also* Technical Assistance Manual III-4.3200.

customers, Plaintiff's claim suffers from an independently fatal problem, as the law is well settled that the ultimate decision as to what auxiliary aid would have been provided should be made by the public accommodation, not her.  Consistent with Title III's focus on ensuring access, the DOJ's regulations link the obligation to "furnish appropriate auxiliary aids and services" to what is "necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1)(i).[7] Rather, "[t]he auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication."[8] Thus, DOJ recently reaffirmed to a congressional representative that "public accommodations have flexibility in how to comply with the ADA's general requirements of nondiscrimination and effective communication."[9] Courts, too, have uniformly recognized that the ADA does not require public accommodations to provide a disabled individual's preferred auxiliary aid. *See Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1171 (8th Cir. 2019) ("The exact form of auxiliary aid necessary is left up to the public accommodation[.]"; *Feldman v. Pro Football, Inc*., 419 F. App'x 381, 394 (4th Cir. 2011) ("if … auxiliary aid are needed to ensure effective communication, the public accommodation can choose what auxiliary aids are provided as long as the result is effective communication."); *West v. Moe's Franchisor, LLC*, No. 15-cv-2846, 2015 WL 8484567, at *4 (S.D.N.Y. Dec. 9, 2015) ("the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication") (quoting 28 C.F.R. § 36.303(c)(1)(ii)).

Thus, as Congress, the DOJ, and the federal courts have made clear, nothing in the law requires Braille generally, or a Braille gift card specifically, where other auxiliary aids would

---

[7] Technical Assistance Manual III-4.3200 (explaining that the purpose of the auxiliary aid requirement is to ensure effective communication).

[8] Nondiscrimination on the Basis of Disability by Public Accommodations in Commercial Facilities, 56 Fed. Reg. 35,544, 35,567 (July 26, 1991).

[9] Stephen E. Boyd, Assistant Attorney General, Letter to Rep. Ted Budd (Sept. 25, 2018).

provide effective communication. "In many cases, more than one type of auxiliary aid or service may make effective communication possible."[10] The regulation identifies several options that might assist a blind patron, including Braille materials but also qualified readers and other non-Braille aids. See 28 C.F.R. § 36.303(b)(2).  Given such inherent flexibility, it would make little sense for any public accommodation to reflexively conclude that it was legally required to make and sell Braille gift cards as a routine matter, particularly when fewer than 10% of the 1.3 million legally blind Americans use Braille to communicate.[11]

Thus, DOJ states in its commentary to the regulations that "a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu, a theatre is not required to provide Braille tickets if ushers are available to guide patrons to their seats, and a clothing store is not required to provide Braille price tags if sales people are available to provide price information.." 28 C.F.R. Pt. 36, App. C; *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (explaining that restaurants are not required to provide large print menus so long as they ensure the menu is effectively communicated). Indeed, if a theater such as Alamo is not required to provide Braille tickets, why should it be required to provide Braille gift cards?  The DOJ's Technical Assistance Manual provides many other examples of auxiliary aids and services that provide access to blind individuals that do not involve Braille, including as follows:

> ILLUSTRATION: W, an individual who is blind, needs assistance in locating and removing an item from a grocery store shelf. A store employee who locates the desired item for W would be providing an "auxiliary aid or service."

> ILLUSTRATION 3: S, an individual who is blind, visits an electronics store to purchase a clock radio and wishes to inspect the merchandise information cards

---

[10] Technical Assistance Manual III-4.3200.
[11] National Federation of the Blind, The Braille Literacy Crisis in America (Mar. 26, 2009), https://www.nfb.org/sites/www.nfb.org/files/images/nfb/publications/bm/bm09/bm0905/bm090504.htm.

next to the floor models in order to decide which one to buy. Reading the model information to S should be adequate to ensure effective communication. Of course, if S is unreasonably demanding or is shopping when the store is extremely busy, it may be an undue burden to spend extended periods of time reading price and product information.

ILLUSTRATION 4: S also has tickets to a play. When S arrives at the theater, the usher notices that S is an individual who is blind and guides S to her seat. An usher is also available to guide S to her seat following intermission. With the provision of these services, a Brailled ticket is not necessary for effective communication in seating S.

DOJ Technical Assistance Manual III-4.3200.  The ADA's legislative history includes similar statements.[12]

Here, Plaintiff alleges no facts suggesting that requiring Defendant to make and sell Braille gift cards is the only way to ensure effective communication with her, much less the putative class of "all legally blind individuals in the United States" he seeks to represent. Among other fundamental problems, Plaintiff's FAC fail to address "the nature, length, and complexity of the communication involved," "the context in which the communication is taking place," or the "privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). Absent more, Defendant is no more required to provide Braille on a gift card than a clothing store is required to provide Braille price tags or a restaurant is required to provide Braille menus when other effective methods of communication are available, and her lawsuit should be dismissed as a matter of law for this additional reason.

---

[12] Report from the House Committee on Education and Labor, House Rep. No. 101-485(II), at 107 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 390 (providing that "auxiliary aids and services for blind persons" include readers such that a restaurant "would not be required to provide menus in braille if it provided a waiter or other person who was willing to read the menu" and "a bookstore need not braille its price tags, stock brailled books, or lower all its shelves," but rather, "a salesperson can tell the blind person how much an item costs, make a special order of brailled books, and reach the books that are out of [] reach"); Report from the House Committee on the Judiciary, House Rep. No. 101-485(III), at 59 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 482 (stating that it "may not be necessary to provide braille price tags for shoppers who are visually impaired").

### C.    Plaintiff's Remaining Claims Should Be Dismissed With The ADA Claim.

Plaintiff's failure to state a cognizable claim under the ADA dooms his remaining claims under the NYSHRL and NYCHRL. *See Rodal v. Anesthesia Grp. of Onondaga*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."); *Romanello v. Shiseido Cosmetics Am., Ltd.*, No. 00 Civ. 7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002) (applying ADA analysis to both NYSHRL and NYCHRL); *Stephens*, 547 F. Supp. 2d at 278 ("Because the scope of the disability discrimination provisions of the NYCHRL and NYSHRL are similar to those of the ADA … [Plaintiff's] claims under the NYCHRL and NYSHRL [should] also [be] dismissed.").

And because Plaintiff's substantive discrimination claims under federal and state law fail as a matter of law, her claim for declaratory relief (the fourth count of the FAC) cannot survive and should be dismissed.  *KM Enter., Inc. v. McDonald*, No. 11-CV-5098 ADS ETB, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App's 12 (2d Cir. 2013) (where "the Plaintiff has no independent substantive claim to a right to [] relief … the cause of action for declaratory relief is appropriately dismissed for failure to state a claim") (*citing Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-cv-3199-LAP, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005)).

## II.    The FAC Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because Plaintiff Lacks Standing To Sue Under The ADA,  The NYSHRL And The NYCHRL.

### A.    Plaintiff Has Not Alleged Facts Sufficient To Show Actual Past Injury And Imminent Future Injury.

A claim must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when a plaintiff has failed to allege facts sufficient to establish standing under Article III of the Constitution. *Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015). Article III standing requires, among other things, an "injury in fact" that is concrete

and particularized and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Further, in order to seek injunctive relief, a plaintiff must establish a likelihood of imminent future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (explaining that a plaintiff must establishing standing "for each form of relief that is sought").

The Second Circuit has distilled these requirements specifically for ADA cases. Sufficient injury in fact exists in the ADA context where: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [defendant's establishment] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013). The last factor is especially necessary to show the likelihood of imminent future injury required for injunctive relief. Plaintiffs alleging barriers at a place of public accommodation have standing to seek injunctive relief if they also "show a plausible intention or desire to return to the place but for the barriers to access." *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005) (quoting *Lujan*, 504 U.S. at 560); *See Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *8.

Though a plaintiff need not make the "futile gesture" of visiting a building, the plaintiff must sufficiently allege that the building contained known barriers and that he or she would visit the building in the imminent future but for the barriers. *Id.* An "[i]ntent to return to the place of injury 'some day' is insufficient." *Id.* at 87 (quoting *Lujan*, 504 U.S. at 564).

Even assuming that refusal to create and sell a Braille gift card constitutes actionable discrimination, which Defendant denies for reasons explained previously, Plaintiff does not

plausibly allege a past injury. Her sole allegation of past harm is he once "telephoned Defendant's customer service office" and "inquired if Defendant sold store gift cards containing Braille and was informed" that Defendant does not. FAC ¶ 16. This conclusory statement lacks the specificity required to give rise to a reasonable inference that he suffered a *concrete* and *particularized* injury. *See Feltzin v. Triangle Props. #1, LLC*, No. 14-cv-5131, 2016 WL 11599264, at *5 (E.D.N.Y. Dec. 15, 2016) (explaining that claims without any supporting factual allegations that amount to "no more than a conclusory recitation of the legal elements of a direct injury under the ADA" will not be accepted).

Specifically, Plaintiff's sparse allegations fail to show how she was harmed by Defendant's decision not to sell a Braille gift card. A plaintiff lacks standing where the defendant's alleged actions "posed no obstacle to [plaintiff's] access to the places of public accommodation." *Perdum v. Forest City Ratner Cos.*, 677 F. App'x 2, 3 (2d Cir. 2017). In *Triangle Properties*, the court rejected as improperly conclusory the plaintiff's allegations that he visited a shopping center and "encountered architectural barriers," which generically impaired his ability to "park safely at the premises, to use restrooms safely and to access the goods and services at the premises." 2016 WL 11599264, at *5. The plaintiff failed to plead that "he was ever hindered from accessing or utilizing any part of any tenant's business" in the shopping center or that he ever frequented any particular business. *Id.* Here, Plaintiff makes a similarly conclusory allegation that access barriers on the gift cards have "denied [her] equal access to Defendant's theaters and the numerous goods, services, and benefits offered to the public through the Defendant's store gift cards." FAC ¶ 40. She does not identify what specifically she was trying to access, what precise barriers prevented her from accessing it, and how those barriers prevented her access. Indeed, it is hard to imagine why the absence of a Braille gift card

would impede Plaintiff's ability to patronize any of Defendant's theaters because she can pay with a credit card, a debit card, or cash – the same methods of payment she would need to use to buy a gift card in the first place.

Plaintiff also fails to allege, aside from the date on which she made his inquiry, any other facts that would support a reasonable inference that she suffered an ADA injury. Plaintiff does not specify what phone number she called, whether she explained why she was inquiring about purchasing a gift card, or how her personal use or enjoyment of Defendant's physical theater was impeded by Defendant's failure to display, market, and sell Braille gift cards. FAC ¶ 16.  As in *Triangle Properties*, this lack of verifying detail is insufficient to "tether [the] alleged violations to any alleged injury" from "a personal encounter" with an ADA violation. 2016 WL 11599264, at *5.

Beyond failing to sufficiently allege past injury, Plaintiff shows no plausible intention to return to Defendant's theaters. Even though Plaintiff claims to have been a customer an unspecified "Defendant's theaters" on prior occasions (apparently without encountering any problems) before filing suit ("FAC ¶ 21"), Plaintiff still must allege facts that "show a plausible intention or desire to return to the place but for the barriers to access." *Shariff v. Channel Realty of Queens, LLC*, No. 11-cv-1499, 2013 WL 5519978, at *2 (E.D.N.Y. Sept. 30, 2013); *Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *8-10 (holding in a nearly identical case "Plaintiff has simply not alleged enough facts to plausibly plead that he intends to 'return' to the place where he encountered the professed discrimination. Put differently, there are not enough facts in Plaintiff's complaint to plausibly suggest that he will be injured by Banana Republic's failure to sell Braille gift cards in future).

Those facts might include specific allegations regarding the proximity of the public accommodation to plaintiff's residence, past patronage of the business, the definitiveness of a desire to return, and frequency of travel near the defendant. *Id.* at *3 (quoting *Access 4 All, Inc. v. G&T Consulting Co., LLC*, No. 06 CIV 13736, 2008 WL 851918, at *8 (S.D.N.Y. Mar. 28, 2008)). Plaintiff falls well short of alleging fact sufficient to establish more than an "[i]ntent to return to the place of injury 'some day.'" *Id.* at *2.

The FAC includes only a few conclusory allegations. Plaintiff asserts that barriers on Defendant's store gift cards have "deterred [her] from visiting Defendant's physical locations" because he was unable to purchase a Braille gift card. FAC ¶ 44. She also alleges that she "intends to immediately purchase at least one store gift card from the Defendant as soon as" they become available. FAC ¶ 45. But she does not allege any facts tracking the factors that would support a genuine intention to visit one of Defendant's theaters. She offers no allegations regarding how close she lives to Defendant's theaters (only her address and the address of a Brooklyn location which are approximately 15 miles apart), whether she has visited that theater in the past, whether she often travels near Defendant's theaters (which are not in Manhattan where Plaintiff lives), or whether she has had any other interactions with the theater. Plaintiff lives in New York City and vaguely states that she resides, "close to Defendant's theater located at 445 Albee Square West Brooklyn, NY."  FAC ¶ 25, but that allegation is hardly sufficient. And in any event, "a plaintiff's showing that she 'live[s] in close proximity' to the public accommodations she is challenging is clearly insufficient to establish standing under Title III of the ADA," *Gen. Nutrition*, 388 F. Supp. 2d at 89; *Dominguez*, 2020 U.S. Dist. LEXIS 72193 at *8-10.

At best, Plaintiff alleges a "some day" intention to return to Defendant's restaurant. In *Stone Equities*, the magistrate judge rejected as an insufficient "some day" intention the plaintiff's statement that he intended to return to a facility once it "becomes fully accessible." *Feltzin v. Stone Equities*, No. 16-cv-6457, 2018 WL 1115135, at *11 (E.D.N.Y. Feb. 8, 2018). And in *Castillo*, the court found "it was not reasonable to infer that [the plaintiff] intended to return" where the plaintiff pleaded only an intent to visit a theater "once the access barriers are remedied" but failed to allege that he visited the theater in the past, lives near the theater, or travels near the theater. *Castillo v. The John Gore Organization, Inc.*, No. 19-cv-388, 2019 WL 6033088, at *6 (E.D.N.Y. Nov. 14, 2019). Plaintiff makes nearly the same statement here as those found inadequate in *Stone Equities* and *Castillo*—that she intends to purchase a gift card "as soon as the Defendant sells store gift cards that are accessible to the blind." FAC ¶ 21. That is plainly not enough.

Finally, Plaintiff's claim of an injury sufficient for standing purposes is undermined by the fact that Plaintiff's FAC is one of at least 240 virtually identical copycat lawsuits filed against various retailers in New York, as well as the fact that Plaintiff herself has filed many of these lawsuits. "[A] plaintiff's litigation history can undercut the sincerity of his or her expressed intent to return." *Norkunas v. Wynn Resorts Holdings, LLC*, No. 11-cv-1499, 2007 WL 2949569, at *4 (D. Nev. Oct. 10, 2007); *see also Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 175 (S.D.N.Y. 2006) (recognizing that "at least two courts have dismissed cases for lack of standing where the named plaintiff was a serial ADA litigant" and acknowledging that "bare-bones claims" from serial ADA litigants "raise some eyebrows" and raise the possibility that plaintiff's claim is "something less than genuine"); *Lamb v. Charlotte*

*Cty.*, 429 F. Supp. 2d 1302, 1309 (M.D. Fla. 2006) (plaintiff's claim that she would return to properties was not credible given the number of similar suits she filed).

In sum, Plaintiff does not plausibly allege a past injury nor anything more than a hypothetical "some day" intention to return to Defendant's theater. For these reasons, Plaintiff lacks Article III standing to pursue her ADA claim.

### B.     Plaintiff's Remaining Claims Should Be Dismissed With The ADA Claim.

If this Court dismisses Plaintiff's ADA claim for lack of standing, it should also dismiss the state and municipal law claims. The "New York State and City claims are governed by the same standing requirements as the ADA." *Mendez v. Apple, Inc.*, 2019 WL 2611168, at *4. Moreover, the Court should decline to exercise supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). And doing so is particularly appropriate where "all federal-law claims are eliminated before trial," as would be true here. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 727 (2d Cir. 2013).

### CONCLUSION

Entertaining Plaintiff's request for injunctive relief would necessitate an unprecedented expansion of the ADA, New York state law, and New York City law into laws controlling goods and services themselves, rather than the places of public accommodation that make the goods and services available.  It would require rejecting on-point DOJ regulations and guidance, ignoring well-settled federal court precedent, and ushering in a sea change to the way retailers, restaurants, and other places of public accommodation have long understood the law.  And it would burden retailers, restaurants, movie exhibitors and courts in ways never intended by

federal, state and municipal lawmakers.   It simply cannot be the case that Defendant and basically every major public accommodation with a presence in New York has violated the ADA, state law, and city law for decades by not offering Braille gift cards.  Plaintiff's claims against Defendant fail as a matter of law, and Plaintiff lacks standing to pursue them.

For the foregoing reasons, the First Amended Complaint should be dismissed in its entirety with prejudice either because Plaintiff has failed to state a cognizable claim under the ADA, the NYSHRL, and the NYCHRL or because Plaintiff lacks standing even if she has pleaded an actionable claim.

Dated:  White Plains, NY
        May 26, 2020

Respectfully submitted,

By:   */s/ Joseph J. DiPalma*
      Joseph J. DiPalma, Esq.

      *ATTORNEYS FOR DEFENDANT*

25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------X

**EVELINA CALCANO, ON BEHALF OF**
**HERSELF AND ALL OTHER PERSONS**
**SIMILARLY SITUATED,**

                          **Plaintiffs,**

**vs.**                                                              **Case No. 1:19-cv-11386-LGS**

**ALAMO DRAFTHOUSE CINEMAS, LLC,**

                          **Defendant.**

----------------------------------------------------------X

**<u>CERTIFICATE OF SERVICE</u>**

        This is to certify that a true and correct copy of Defendant's Memorandum of Law

in Support of Motion to Dismiss Plaintiff's First Amended Complaint has been electronically

filed via ECF and served via First Class mail at the addresses set forth below on the 26th day of

May, 2020 on Plaintiff at the address set forth below:

                Darryn G. Solotoff, Esq.
            Law Office of Darryn G. Solotoff, PLLC
              25 Melville Park Road, Suite 108
                  Melville, New York 11747
                    ds@lawsolo.net
                    516-695-0052
                *Attorneys for Plaintiff*

                                        */s/ Joseph J. DiPalma*
                                        Joseph J. DiPalma

4811-6301-6636, v. 1

26